Nolker, Appellant, *v.* Ford Collieries Company.

Argued May 2, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Murray J. Jordan,* with him *Fred J. Jordan* and *Arthur L. McLaughlin, Jr.,* for appellant.

*William A. Challener, Jr.,* with him *William A. Challener,* of *Challener & Challener,* for appellee.

OPINION BY CUNNINGHAM, J., October 4, 1940:

The claimant in this workmen's compensation case has appealed from the action of the court below in sustaining the exceptions of the employer to an award of compensation to her for the death of her husband, setting aside the award, and, in effect, entering judgment in favor of the defendant coal company.

The decedent, Charles Nolker, fifty-nine years of age, and his son were employed as miners by the appellee company. In the course of their employment on June 15, 1937, they loaded six cars during the forenoon; after eating their lunch they went along the entry for a short distance from the room in which they were working to obtain two empty cars for loading. Together they pushed the empties along the main haulage until they reached the switch into their room; the decedent then "pushed them in" while the son "threw the switch." While so doing the father suddenly collapsed and died of "acute cardiac failure." Compensation was awarded upon the theory that the employee's death was attributable to overexertion. The common pleas, in an opinion by KENNEDY, J., held that claimant had failed to meet the burden of showing by competent evidence that her husband's death was caused by an "accident," within the meaning of Section 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §§411 and 431.

It is uncontroverted that decedent, at least since 1934, had been suffering with and under medical treatment for coronary stenosis—a hardening and narrowing of the coronary artery. In the language of one of claimant's medical witnesses, Dr. E. W. Cross, it is an organic disease of the heart the prognosis of which is "ultimately always death." The employee, by direction of his

physician, constantly carried in his pocket capsules which, when crushed and inhaled, would usually relieve the attacks of pain. The disease had progressed to the stage where its victims "are frequently found dead in bed" or "drop over in their rocking chairs."

There is no evidence on this record of any unusual or sudden exertion upon the part of the decedent. He was engaged in hard work when stricken, but the evidence would not support a finding that there was anything unusual or abnormal about the character of the work or the manner of its performance which would distinguish it from the work he had been doing for years. Excerpts from the son's testimony read: "By the referee: Q. Was it usual—was it a usual thing for your father to push two cars at one time? A. Well, sometimes pushed two in if it's not too hard. If it's too hard we would lay one aside and push one of them. ...... Q. Is it the usual thing to do when you have empty cars, push them down the entry until you get past the switch, then you throw the switch and the other fellow push the empties in? A. Yes. Q. You had done that before? A. When the motor went the other way, we would come back out and throw the switch, but this time, he [the motorman] was over in five, right on the other side. He had some more loads to pull through, see. Q. So you had done that before, as I understand you? A. Sometimes did; sometimes didn't, just depended on where the motorman was."

Although the witness said he had never pushed two cars at the same time himself, it is clear he did not mean he could not do so without unusual effort. His testimony continued: "Q. You said you didn't push them because you weren't allowed. Who didn't allow you? A. Why the union didn't *allow* you to take two. Q. Do you know why that was put in? A. I don't know why, but you aren't allowed to take two cars on

a trip. One car on a trip when one man is working."
(Italics supplied)

Certain established principles of law are involved
upon this appeal; they may be thus stated:

(a) Where the evidence establishes, as it does in
this case, that the death of an employee might have
occurred at any time without the existence of any super-
vening cause, the mere existence of a factor—such as
being engaged at the hard labor of pushing mine cars—
which might have hastened death is not proof that such
factor did cause the death; (b) Where the death might
have been the result of one of several causes, the burden
is on the claimant to show that it was an accident in
the course of employment that actually caused it; (c)
That burden is not met by medical testimony of such a
nature as to render an inference that the death resulted
from the cause assigned by the claimant, rather than
from the natural progress of a preexisting fatal disease,
a mere conjecture.

Upon the issue of causal connection, the claimant
called two medical experts. Dr. Cross, above mentioned,
would only go so far as to say that the exertion of
pushing the empty cars "might" have had something
to do with the employee's death. The other medical
witness, Dr. Harry N. Malone, in his direct examination
assumed the truth of a seriously disputed fact, viz., that
decedent was pushing the cars up a grade and around
a curve, and expressed the opinion "that death was
precipitated by excess physical effort, and which oc-
curred in a previously damaged heart." But on cross-
examination when asked whether a man who had been
suffering for three years with coronary stenosis was
not "apt to die at most any time," he replied: "Some
of these cases die without any effort or stress being
applied at the time; others die suddenly under the effect
of strain."

The answer of claimant's first medical witness falls

far short of the required standard (*Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995) and it seems to us that the inference drawn by the second was just as much of a conjecture as was the opinion of the doctor, referred to by our Supreme Court in *Monahan v. Seeds & Durham Co.*, 336 Pa. 67, 6 A. 2d 889.

In the case of *Crispin v. Leedom and Worrall Company*, 142 Pa. Superior Ct. 1, 15 A. 2d 549, we had occasion to classify the cases in which the existence of a preexisting ailment was a factor in the disposition of claims under our Workmen's Compensation Act. In our opinion, the present case falls within the first class of cases considered in that opinion, viz., cases in which injuries or deaths were held to be noncompensable because of lack of proof of any *accident* in the course of employment. There is no more evidence of an accident in this case than there was in *Pelusi v. Mandes et al.*, 109 Pa. Superior Ct. 439, 167 A. 456, fully discussed under the first classification in the Crispin opinion.

Judgment affirmed.