## Baur *v.* Mesta Machine Company et al., Appellants.

Argued November 14, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Henry E. Rea, Jr.*, with him *Brandt, Reister, Brandt & Malone*, for appellants.

*Clyde E. Donaldson*, for appellee.

*Thomas Lewis Jones*, for amicus curiae.

OPINION BY WOODSIDE, J., March 22, 1961:

The widow of Frank Baur, a steel company employee who died of a coronary occlusion suffered while in the course of his employment, was denied compensation by the Workmen's Compensation Board on the ground that the deceased suffered no accident. The County Court of Allegheny County reversed the board and granted compensation, and the insurance carrier appealed to this Court.

The only question is whether the board was guilty of a capricious disregard of competent evidence in finding that there was no accident.

Frank Baur, aged 45, was employed as a steel chipper by the Mesta Machine Company. On February 29, 1956, he began work at 3 o'clock in the afternoon, intending to work an eight hour day. He started work by performing a task less strenuous than his usual employment. While engaged in this less strenuous task, he became ill and went to a dispensary, or first aid station, which the employer operates on plant property. A registered nurse is on duty at the dispensary when the plant is in operation, and a physician visits it for approximately two hours every afternoon.

When Baur arrived at the dispensary it was 4:15 P. M., and a male registered nurse was on duty. According to the evidence presented by the claimant, Baur walked into the first aid room "complaining of diarrhea and vomiting and pains in his stomach and chest pains when on deep breathing and also chills." He told the nurse he had been under a doctor's care for a virus condition, and the nurse suggested that maybe he still had a virus and that he should see his family doctor who had been treating him. The nurse had him lie on a cot, and about an hour and a half later gave him a teaspoonful of citrus carbonate. While Baur was at the dispensary, he had two bowel movements and he vomited. The nurse checked his pulse several times. Although, according to the nurse, "he got over his initial shock," he, nevertheless, remained ill, and the nurse called a taxi to take him home. The nurse called Baur's wife and told her he was sending her husband home in a taxi, and that she should get a doctor and have him waiting at the house. A fellow employe brought Baur's street clothes to the dispensary, and after he had changed from his working clothes, Baur walked with his fellow employe to the cab. It was then approximately 6:10 o'clock. While taking Baur home, the cab driver noticed his passenger was unconscious, so he drove directly to a hospital where Baur was pronounced

dead. It was determined that he died from a coronary occlusion.

Baur's widow filed this claim for workmen's compensation, and also brought a suit against the employer in trespass. A demurrer to the trespass action was sustained by the Court of Common Pleas of Allegheny County, and affirmed by the Supreme Court. *Baur v. Mesta Machine Company*, 393 Pa. 380, 143 A. 2d 12 (1958). We are here concerned with the workmen's compensation case.

The Workmen's Compensation Act of June 21, 1939, P. L. 520, §301(a), 77 P.S. §431, provides that ". . . compensation for personal injury to, or for the death of [an] employe, *by an accident* in the course of his employment, shall be paid in all cases by the employer, without regard to negligence, . . ." (Emphasis supplied.) The Act further provides in §301(c), as amended, 77 P.S. §411: "The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean only violence to the physical structure of the body, and such disease or infection as naturally result therefrom;".

The board here found there was no accident. Disability overtaking an employe at work is not compensable unless it is the result of an accident, and the accident cannot be inferred merely from the injury or death. *Good v. Pa. Dept. of Property & Supplies*, 346 Pa. 151, 30 A. 2d 434 (1943); *Hamilton v. Albert M. Greenfield, Inc.*, 184 Pa. Superior Ct. 443, 135 A. 2d 797 (1957); *Rosso v. Aetna Steel Products Corp.*, 174 Pa. Superior Ct. 258, 101 A. 2d 392 (1953); *Landis v. General Motors Corp.*, 180 Pa. Superior Ct. 332, 119 A. 2d 645 (1956).

A heart attack is an injury, but it is not an accident, although it may be the result of an accident either by a direct or an indirect trauma or by an unusual exertion. *Bonaduce v. Transcontinental Gas Pipe Line*

*Corp.*, 190 Pa. Superior Ct. 319, 154 A. 2d 298 (1959); *Samoskie v. Philadelphia & Reading Coal & Iron Co.*, 280 Pa. 203, 124 A. 471 (1924); *Strode v. Donahoe's Fifth Ave. Store*, 127 Pa. Superior Ct. 231, 193 A. 86 (1937); *Balaban v. Severe*, 157 Pa. Superior Ct. 463, 43 A. 2d 543 (1945). It is admitted by the claimant that the heart attack which the deceased suffered was not brought on by any unusual physical exertion or mishap, so there was no accident here of the type dealt with or discussed in the above cases.

It is frequently said that "accident" is used in the Workmen's Compensation Act "in its usual, ordinary, popular sense," *Lacey v. Washburn & Williams Co.*, 309 Pa. 574, 577, 164 A. 724 (1933), but happenings or events such as the unusual exertions in the above cases have been held to be accidents by the courts, even though such happenings would not be referred to by laymen as accidents. Nor would the failure of an employer to administer to a sick employe ever be referred to as an "accident," if the use of the word were confined to its usual, ordinary, popular sense.

The claimant originally pressed her trespass action, contending that nothing happened here that could be called an accident. The employer, she contended, was negligent in failing to call a physician and in failing to properly treat her husband when he became ill, and that this negligence brought about his death, and that the employer was, therefore, liable to her in trespass. The widow relied upon the alleged negligence of the employer to establish his liability to her. By pressing her trespass action, she took the position that "negligence" could not be equated with "accident," nor could that which allegedly did not happen (to wit, the providing of proper medical care) be held to be an accident. She took the position that an accident is something that happens,—an event—not something that does not happen. The Supreme Court rejected her argument

and accepted the contention of the employer, who argued that there was an accident under the allegations of the plaintiff's claim in trespass.[1] The Court held that if death was directly due to the neglect of the employer in not providing proper medical care which he had agreed to assume, then the death resulted from an accident.

[1] Counsel for claimant is understandably annoyed that the defendant argued in the trespass case that there had been an accident, and is now contending that there was no accident. It must be understood, however, that the argument in the trespass case was made on the basis of the allegations of the plaintiff. The contention here is made on the basis of the evidence in the workmen's compensation case. Whether there was negligence and whether it was the proximate cause of the death would have been a question which would have been open to determination by a jury, even if the widow had been successful in overruling the demurrer in the trespass action.

The Pennsylvania Self Insurers' Association has indicated a concern over the lower court's application of the Supreme Court's opinion to this case. After receiving this Court's permission, the association filed a brief in this case as amicus curiae.

Both it and the appellant have suggested that to subject an employer, who makes an effort to administer to his ill employes, liable for compensation for disability resulting from inadequate care, while those offering no assistance to their ill employes have no liability, discourages employers from maintaining first aid stations. The association argues that the ruling punishes those who demonstrate a concern over employes who become ill in the course of their employment, and rewards those who refuse care to ill employes. As we are bound by the holding of the Supreme Court in the trespass action, we believe the argument on public policy is not properly directed to this Court.

We recognize the additional liability for compensation placed upon the employer who gratuitously assists his ill employes, but in trespass law we find a somewhat similar liability upon one who volunteers to assist an ill or injured stranger whom he finds by the roadside. Whether the law should operate to punish rather than praise the Good Samaritan is a question we shall not discuss in this case.

As far as we have been able to ascertain, this gives a meaning to "accident" not before attributed to it either in workmen's compensation cases or accident insurance cases, and presents us with the problem of applying a concept of "accident" never before expressed either in this or any other jurisdiction.[2] It opens a whole new field of workmen's compensation law, which undoubtedly will result in an unlimited number of cases involving employes who have been assisted by their employers after they became ill from natural causes while in the course of their employment.[3] It is important, therefore, that we carefully examine the Supreme Court opinion in *Baur v. Mesta Machine Company,* supra, 393 Pa. 380, 143 A. 2d 12 (1958), so that we might properly apply its pronouncements to the evidence presented in this case.

The Court there said, "Here death was directly attributable to the neglect of the attendant in not providing proper[4] medical care which was a duty the employer had agreed to assume." p. 385. The Court held that the death of an employe under these assumed facts would be considered in law to have been due to an accident as the word is used in the Workmen's Compensation Act. As the trespass case reached the Supreme Court on a demurrer, that Court had no intention of deciding that the attendant *was* guilty of "neglect," or, if there was neglect, that death *was* "directly due"

---

[2] The Georgia Court of Appeals said in *Bartram v. City of Atlanta,* 30 S.E. 2d 780 (1944), that "accident" as used in the Workmen's Compensation Act of that state, includes injury resulting from negligence of employer which afford right of action at common law, but was applying the statement to an injury suffered by a fall.

[3] See article of Hon. John M. McLaughlin, LL.D. of Erie in Vol. 21 of University of Pittsburgh Law Review 445 at page 482 et seq.

[4] The opinion elsewhere contains a reference to "providing *adequate* medical care."

to it, or that "proper" medical care *was not* provided, or that the employer *did* agree to provide medical care. The Court acted upon allegations in the plaintiff's claim, which it accepted as true. They were assumed by the Supreme Court, but not decided by it.

According to our understanding of the opinion, the Court decided that when an employer provides a first aid room or a dispensary and administers to ill employes, he has a duty to provide proper or adequate medical care to them, and that *if* the employe suffers an injury or death directly due to the neglect of the employer to provide such care, there has been an accident, which, if in the course of his employment, entitles a claimant to a workmen's compensation award.

The claimant has the burden of establishing that the decedent's death was due to an accident, and not to natural causes. *Rosso v. Aetna Steel Products Corp.,* supra, 174 Pa. Superior Ct. 258, 101 A. 2d 392 (1953); *Bonaduce v. Transcontinental Gas Pipe Line Corp.,* supra, 190 Pa. Superior Ct. 319, 154 A. 2d 298 (1959); *Lane v. Horn & Hardart Baking Co.,* 261 Pa. 329, 333, 104 A. 615 (1918). In order to establish an accident of the type described by the Supreme Court, the claimant here must show (1) that the employer agreed to provide medical care to its employes who became ill in the course of their employment; (2) that the nurse neglected to provide proper care; and (3) that the death of the employe was due to the neglect of the employer to provide proper care.

We believe that it was not the intention of the Supreme Court to make the employer an insurer of the health of its employes while in the course of their employment. The Workmen's Compensation Act was passed to compensate employes for disability caused by accidents, but as has been frequently said, it is not insurance against disability because of illness or death

resulting from natural causes. *Gausman v. Pearson,* 284 Pa. 348, 131 A. 247 (1925).

To make the defendant liable under any theory, there must be something more than the fact that its employe's illness was not cured or that the employe's death from a coronary occlusion, a natural cause, was not prevented by some possible direct action of the employer. As the Supreme Court clearly indicated, the claimant must show that there was "neglect to provide proper care." What constitutes proper care and under what circumstances the employer is guilty of neglect to provide it, cannot be decided on the basis of the ultimate effect of the coronary occlusion. Death occurring in the normal course of the decedent's work does not raise even an inference of an accident. *Landis v. General Motors Corp.,* supra, 180 Pa. Superior Ct. 332, 334, 119 A. 2d 645 (1956); *Adamchick v. Wyoming Valley Collieries Co.,* 332 Pa. 401, 3 A. 2d 377 (1939). It is common knowledge that many people die from coronary occlusions who have the best of medical care, and that many survive an attack with no medical care.

There must be some test by which "neglect in not providing proper care" can be measured or determined. We can conceive of only one reasonable test which can be applied. Proper care must be the care which an employer should be expected to provide under all the circumstances, or "what a reasonable, prudent registered nurse would have done under the circumstances," to borrow a statement from the claimant's brief.[5] Is the type of care required from the employer to be measured on the basis of the care expected from a specialist in the field of the particular illness from which the employe is suffering, or the care expected from a general medical practitioner, or that expected from a regis-

---

[5] This is quoted from her brief on what she says she proved the employer's agent failed to do.

tered nurse, or that expected from a layman? Here the employer provided a registered nurse, and his duty was to provide the care expected from a reasonably prudent registered nurse. If this was the type of care provided, there would be no neglect to provide proper care.

The claimant argues that she is not attempting to convict anyone of negligence, and that the failure to provide medical care in and of itself constitutes an accident. Of course, workmen's compensation is not based upon negligence, but on the other hand some fact finding body must determine what constitutes "neglect" to provide "proper" medical care.

Not every failure on the part of the employer to furnish medical care to a sick employe is an accident. It is not the failure to provide care that has been held to constitute an accident, but the neglect to provide *proper* care. In each case it must be decided what care is proper, and what constitutes neglect on the part of employer to provide it. If it is found that the employer had a duty to provide proper care, and neglected to provide it, and the death was due to the neglect of the employer to provide such care, then there was an "accident."

The court does not find the facts. The legislature gave that responsibility to the board. The question before the court below and this Court in a case like this one was first carefully stated by the late President Judge KELLER in *Walsh v. Penn Anthracite Mining Co.,* 147 Pa. Superior Ct. 328, 333, 24 A. 2d 51 (1942), in the following language: "Where the decision of the board is against the party having the burden of proof—in this case, the claimant—bearing in mind that a trier of fact is not *required* to accept even uncontradicted testimony as true (District of Columbia's Appeal, 343 Pa. 65, 79, 21 A. 2d 883, 890) the question before the court is whether the board's findings of fact are con-

sistent with each other and with its conclusions of law and its order, and can be sustained without a capricious disregard of the competent evidence."

This has been followed in numerous cases. *Seisek v. Blaw-Knox Co.,* 192 Pa. Superior Ct. 347, 349, 162 A. 2d 33 (1960); *Dindino v. Weekly Review Publishing Co., Inc.,* 188 Pa. Superior Ct. 606, 610, 149 A. 2d 475 (1959); *Allen v. Patterson-Emerson-Comstock, Inc.,* 180 Pa. Superior Ct. 286, 119 A. 2d 832 (1956).

The test here is not whether there was competent evidence to sustain a finding that there was an accident, but whether there was a capricious disregard of the evidence in the refusal to find that there was an accident. *Allen v. Patterson-Emerson-Comstock, Inc.,* supra, 180 Pa. Superior Ct. 286, 119 A. 2d 832 (1956). It is only when the facts are admitted and permit of a single legitimate inference that the question becomes one of law. *Carter v. Vecchione,* 183 Pa. Superior Ct. 595, 133 A. 2d 297 (1957). The courts have no power to reverse the board on a question of fact even when they may feel that the weight of the evidence is against the finding made by the board. *Lorigan v. W. O. Gulbranson, Inc.,* 184 Pa. Superior Ct. 251, 132 A. 2d 695 (1957).

The appellee contends that the board capriciously disregarded the uncontradicted testimony of the claimant in finding that there was no accident in this case. It is necessary to review the evidence in some detail in order to pass upon this contention. The defendant and its insurance carrier offered no evidence, so the case must be determined on the claimant's evidence. We have set forth in the beginning of this opinion, the facts which the evidence establishes. There can be no doubt that the employer provided a dispensary or a first aid station where a registered nurse was provided to assist and render first aid not only to injured em-

ployes, but also to employes who became ill while in the course of their employment.

Before an employer is under any duty to the employe to provide *proper or adequate* medical care, he must agree to provide medical care. *Baur v. Mesta Machine Co.*, supra, 393 Pa. 380, 385, 143 A. 2d 12 (1958). Whether the employer agrees to assume such duty is a question of fact for the board to determine from the evidence, and may lead to many interesting situations ranging from where the employer confines his medical care to keeping a supply of aspirin and alka-seltzer, to where he provides a fully staffed hospital. Here, however, there can be no doubt that the employer provided the dispensary, employed a registered nurse and directed or permitted the nurse to administer first aid to its employes who were ill, as well as those who were injured. This is a fact established by the registered nurse, the records of the employer and the testimony of a fellow employe of the deceased. The employer, therefore, agreed to provide medical care to his employes and was required to provide *proper* medical care to the deceased. This the board must have found as a fact because it passed on to the consideration of whether the medical care was proper and whether there was any causal connection between the care received and the death. The board was not required to accept even an uncontradicted opinion of the claimant's medical witness that there was neglect to provide proper care and that the neglect substantially contributed to the death of the decedent. *Bakaisa v. Pittsburgh & West Virginia R. R. Co.*, 149 Pa. Superior Ct. 203, 27 A. 2d 769 (1942).

The claimant called Wendell B. Gordon, M.D., a specialist in internal medicine and in cardiology and the then president of the Pennsylvania Heart Association. He never treated or saw the deceased and was

called as an expert to give his opinion on the conduct of the nurse and the effect of it upon the deceased. From the assumed facts, he testified that Baur "was treated with a great deal of neglect in not having a doctor," that the nurse "should have called a doctor in my opinion," that he believed "that the delay of two hours caused or contributed to [Baur's] death," that Baur "should have been administered morphine or something similar promptly to relieve his pain and his other symptoms. He should have been given oxygen very likely and he should have been taken promptly to a hospital with oxygen being administered enroute by ambulance," that "pain in the chest and pain in the arms run up a big red flag for me."

As stated in *Walsh v. Penn Anthracite Mining Co.,* supra, 147 Pa. Superior Ct. 328, 333, 24 A. 2d 51 (1942), "There might be, and in fact, we think there was in this case, competent medical testimony that would support a finding of such causal connection" between the alleged neglect and the death (and we might add here to support a finding that the nurse neglected to provide proper care) "But," continued the court, "the board was the body to decide questions of fact."

In evaluating Dr. Gordon's testimony, all of it must be considered, and when this is done, the testimony quoted above loses much of its force. Dr. Gordon was, of course, viewing the assumed facts as a heart specialist with knowledge of the death and with the diagnosis after death of a coronary occlusion. He frankly admitted, "hindsight is easy, isn't it?" Throughout his testimony it is clear that his opinions and conclusions were strongly influenced, if not controlled, by that hindsight. "It wasn't proper to ask a nurse . . . to make a diagnosis and prescribe treatment *as sick as he must have been.*" "He should have had a doctor *as sick as he must have been.*" . . . "the nurse should have

sent for a doctor *as events turned out;*" . . . "If he had received prompt and proper treatment, *he might not have died.*" "Of course I can't" . . . "state specifically that Mr. Baur would have lived if he had been taken to the hospital promptly." "There was no harm done by the citrus carbonate. It was just inadequate *as it turned out. The man died.*"

The force of Doctor Gordon's testimony is further weakened because it was based upon two false assumptions. Throughout his testimony he assumed that Baur had pains in his arms. In at least four questions put to the doctor, reference was made to the pain in Baur's arms, and in at least four answers to other questions, the doctor made reference to the pain in Baur's arms. The evidence was that Baur never said anything about pain in his arms.[6] Furthermore, the doctor stated that Baur "was put to bed because he couldn't stand up." Baur walked into the first aid room; when the nurse was not looking, he walked upstairs to a toilet; when he left the first aid room, he walked away unassisted. Dr. Gordon's opinions apparently were based, at least in part upon these assumptions which are not supported by the evidence. See *Nolker v. Ford Collieries Co.,* 142 Pa. Superior Ct. 18, 21, 22, 15 A. 2d 557 (1940).

Dr. Gordon did not know a single fact about this case except what he had been told. He was merely giving his opinion on what he thought the nurse should

---

[6] The registered nurse testified that he had no recollection of the deceased referring to pain in his arms. Another of the claimant's witnesses to whom Baur had related his symptoms testified that the deceased had not mentioned anything with respect to pain in his arms. We can find no indication in the record that the deceased mentioned pain in his arms to any person. It is interesting that the doctor, counsel for claimant, and even the board made reference to the deceased's pain in his arms. The Supreme Court relying upon an allegation of the plaintiff, properly assumed that the deceased had told the nurse that he had pain in his arms.

have done, and whether there was any causal connection between the failure of the nurse to do what the doctor thought he should have done and the death of the deceased. Basically these were the very questions before the board for *its* decision, and although admissible these opinions were not binding upon the board. See *Cooper v. Metropolitan Life Insurance Co.*, 323 Pa. 295, 302, 303, 186 A. 125 (1936). It is the board's opinion on these points, and not Dr. Gordon's opinion that must ultimately govern the case. There is no doubt about the power of the board to reject Dr. Gordon's opinion. *Bakaisa v. Pittsburgh & West Virginia R. R. Co.*, supra, 149 Pa. Superior Ct. 203, 27 A. 2d 769 (1942); *McMillan v. Wm. S. Miller Co.*, 149 Pa. Superior Ct. 241, 27 A. 2d 735 (1942); *Knight v. Millard*, 154 Pa. Superior Ct. 383, 386, 35 A. 2d 764 (1944); *Revilak v. Coca Cola Co. of Pa.*, 152 Pa. Superior Ct. 503, 33 A. 2d 287 (1943).

The conduct of the nurse must be judged not by hindsight, but in the light of the facts as they appeared while Baur was in the first aid room. According to the evidence, this was the 123rd time Baur appeared at the first aid room during the nine years he was employed by the defendant. It was at least the 12th time he was there complaining of a stomach ailment, indigestion or pain in the abdomen. It was the third time he was there with pain in his chest. He had been there at least six times for a headache. He had not collapsed at work on the day he died. He walked into the first aid room. He told of having been ill of a virus. He complained of diarrhea, vomiting, chills, and pains in his stomach and chest. He did not complain of pain in his arms. Diarrhea is not a symptom of heart trouble, but pain in the arms is. Taken as a whole the symptoms were more indicative of a return of his previous illness than of a heart attack. His condition did

not worsen. He seemed to have "gotten over his initial shock." When he left the first aid room, he changed his clothing and walked a considerable distance unassisted except for the carrying of his lunch box. At no time was he refused a doctor. Under these circumstances was the nurse guilty of neglect to provide proper medical care when he immediately told Baur to lie down, and then later sent him home in a taxi after calling his wife and telling her to have her family physician there?[7] The referee and the board found that the nurse was not guilty of neglect to provide proper care under these circumstances, and we cannot hold, as a matter of law, that in so holding the board capriciously disregarded the competent evidence.

The unanimous opinion of the board was written by its chairman, John L. Dorris, M.D. After relating certain facts and referring to *Baur v. Mesta Machine Co.,* supra, 393 Pa. 380, 143 A. 2d 12 (1958). Dr. Dorris said: "Decedent displayed the symptoms of an ordinary attack of virus. The evidence does not disclose that [the nurse] had any reason to think otherwise. Based upon his opinion, he treated decedent accordingly and the record does not tell us that decedent's condition during the period of treatment deteriorated. Had he known or been expected to know the true state of decedent's health, claimant then would have a stronger case. Moreover, the nurse's treatment may have prolonged decedent's life an hour or two. This is not answered, nor are we told whether or not decedent would have survived had the best possible medical attention been rendered him."

The board found, therefore, that under the circumstances the nurse did not neglect to provide proper

---

[7] The claimant tried but could not get a doctor. Had the taxi cab driver taken the deceased home he would not have received any medical treatment there even if he had been alive.

treatment. The board further found that the claimant had not established, with evidence it believed, that there was any causal connection between the death and any failure of the deceased to receive any particular treatment.

The burden rested upon the claimant to convince the board that the death was the result of an accident and not from natural causes or from the normal progress of a pre-existing ailment. *Mancuso v. Mancuso*, 150 Pa. Superior Ct. 22, 27 A. 2d 779 (1942); *Rosso v. Aetna Steel Products Corp.*, supra, 174 Pa. Superior Ct. 258, 101 A. 2d 392 (1953). Even if an injury is the result of one or more causes, for only one of which the defendant is liable, the burden is on the claimant to individuate that one as the actual cause of his death. *Gausman v. Pearson Co.*, supra, 284 Pa. 348, 131 A. 247 (1925); *Kenny v. Thorton-Fuller Co.*, 190 Pa. Superior Ct. 552, 555, 155 A. 2d 220 (1959). The board did not believe that the employe's death was caused by his failure to receive adequate care, and expressed the thought that the care administered might even have prolonged the employe's life. See *Nolker v. Ford Collieries Co.*, supra, 142 Pa. Superior Ct. 18, 15 A. 2d 557 (1940).

As the power to find facts was given by the legislature to the board and not to the courts, the court below had no authority to substitute its finding of neglect to provide proper care and of a causal connection between the care and the death, for the findings of the board.

Judgment reversed.

RHODES, P. J., concurs in the result.

———

CONCURRING OPINION BY WRIGHT, J.:

I concur in the result. Notwithstanding the decision in *Baur v. Mesta Machine Co.*, 393 Pa. 380, 143

A. 2d 12, it is my view that the death of claimant's husband was clearly not an accident.