418 A.2d 518

**INTERNATIONAL SYSTEMS, INC.**

v.

**PERSONNEL DATA SYSTEMS, INC., Appellant.**

Superior Court of Pennsylvania.

Argued June 20, 1979.

Filed Jan. 18, 1980.

Benjamin E. Zuckerman, Norristown, for appellant.

Walter W. Rabin, Philadelphia, for appellee.

Before HESTER, HOFFMAN and CATANIA,* JJ.

HOFFMAN, Judge:

This is an appeal from the order of the lower court en banc dismissing appellant's exceptions to the chancellor's decree nisi. We find no merit in the contentions raised by appellant on this appeal and, accordingly, affirm the order of the lower court.

In 1974, the parties were engaged in litigation concerning the ownership of a computer program system known as PASS. The litigation was terminated by a written settlement agreement, dated July 15, 1974. In that agreement, appellee acknowledged appellant's ownership of PASS; appellant agreed to pay appellee a specified percentage of sales of PASS for a four year period; appellee was permitted to

* President Judge Francis J. Catania of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

audit appellant's books to verify that appellant was making proper payments; and if such an audit revealed that appellant had underpaid appellee by 10% or more, appellee was entitled to audit and collection expenses, plus reasonable attorneys' fees. Subsequently, a certified public accountant retained by appellee audited appellant's books and determined that appellant had failed to make all the payments required by the 1974 agreement. The parties resolved this dispute in a second settlement agreement, dated April 22, 1976. This agreement provided, *inter alia*, that in lieu of the payments required under the 1974 agreement, appellant was to pay appellee $96,000.00 over a 30 month period as well as the legal and accounting fees incurred by appellee in enforcing its payment rights; that as long as appellant remained current in its obligations under this agreement, appellee would not be liable for any additional legal and accounting fees; and that when appellant had made all payments under this agreement, appellant would be free of all claims by appellee under the 1974 agreement. The last paragraph of the 1976 agreement states: "In the event [appellant] fails to make any of these payments, [appellee] will be restored to its full rights under the [1974] Agreement and may proceed to enforce them regardless of the terms of this document provided that [appellant] receives credit for any payments it has made hereunder." Appellant failed to make all the payments required by the 1976 agreement, and appellee elected to pursue its rights to recover payments under that agreement, rather than under the 1974 agreement. Appellee also sought to recover legal and accounting fees.

Following the trial, the chancellor entered a decree nisi, ordering appellant to pay the arrearages under the 1976 agreement, resume the payments under that agreement, and pay $6,000.00 in legal fees and $2,000.00 in accounting fees. The lower court en banc dismissed appellant's exceptions to the decree nisi and entered a final decree. This appeal followed.

■ Appellant first contends that the lower court erred in allowing appellee to proceed under the 1976 agreement

because that agreement contains an automatic reversion to the 1974 agreement should appellant fail to make the monthly payments. Appellant argues that an examination of the prior versions of the last paragraph of the 1976 agreement and of the surrounding circumstances demonstrates that the parties did not intend appellee to have the option of proceeding under either the 1974 or 1976 agreement if appellant failed to make all the payments under the 1976 agreement.

In *National Cash Register Co. v. Modern Transfer Co.*, 224 Pa.Super. 138, 302 A.2d 486 (1973), our Court stated:

> The general rule is that a court will make no inference or give any construction to the terms of a written contract that may be in conflict with the clearly expressed language of the written agreement. *Spigelmire v. North Braddock School District*, 352 Pa. 504, 43 A.2d 229 (1945); *General Finance Co. v. Pa. Threshermen & Farmers' Mutual Casualty Co.*, 348 Pa. 358, 35 A.2d 409 (1944). Thus, where the language is clear, there is no need for interpretation, and words cannot be added.
>
> In the absence of ambiguity, a written contract is held to express all negotiations and agreements made prior to and leading up to its execution; that is, the negotiations are presumed to be merged in the writing, and oral testimony is inadmissible to explain or vary the writing. *Waldman v. Shoemaker*, 367 Pa. 587, 80 A.2d 776 (1951). This exclusionary rule has been referred to as the "parol evidence rule."

224 Pa.Super. at 142–43, 302 A.2d at 488. In *LeDonne v. Kessler*, 256 Pa.Super. 280, 389 A.2d 1123 (1978), this Court stated: " 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.' " *Id.*, 256 Pa.Super. at 286, 389 A.2d at 1126 (quoting *Gianni v. Russell & Co.*, 281 Pa. 320, 323, 126 A. 791, 792 (1924)). *See also Scott v. Bryn Mawr Arms*, 454 Pa. 304, 307, 312 A.2d 592, 594 (1973); *Colonial Mortgage Service Co. v. Melrose Country Club*, 416 Pa. 340, 342, 206 A.2d 10, 11 (1965).

The 1976 agreement provides that if appellant fails to make any of the required payments, appellee "will be restored to its full rights under the [1974] Agreement and *may* proceed to enforce them regardless of the terms of this document provided that [appellant] receives credit for any payments it has made hereunder." (Emphasis added.) We agree with the lower court that this language unambiguously shows the parties' intention to permit appellee to exercise its rights under either the 1974 or the 1976 agreement. Because the meaning of the language is clear and unambiguous, evidence of the parties' negotiations and prior drafts is inadmissible to explain or vary the language. *National Cash Register Co. v. Modern Transfer Co., supra.* Accordingly, the lower court did not err in permitting appellee to enforce its rights under the 1976 agreement.

■ Appellant next contends that even if appellee was entitled to proceed under the 1976 agreement, the lower court erred in requiring appellant to pay legal and accounting fees incurred by appellee in enforcing that agreement because that agreement does not provide for recovery of such fees. We disagree. The 1974 agreement permits appellee to recover legal and accounting fees from appellant if appellant fails to make the required payments under that agreement. The 1976 agreement provides: "As long as [appellant] remains current on its . . . payment obligations, . . . [appellant] shall not be responsible for any additional accounting or legal fees incurred by [appellee]." The clear implication of this language in the 1976 agreement is that if appellant does *not* remain current in its payment obligations, appellant will be responsible for appellee's legal and accounting fees. We conclude that the parties intended appellant to pay the reasonable legal and accounting fees incurred by appellee in enforcing the 1976 agreement if appellant failed to make all the payments under that agreement.

■ Appellant last contends that even if appellee is entitled to legal fees, it failed to produce sufficient qualified testimony in support of the fees charged by the law firm of

Meltzer & Schiffrin. Appellee introduced into evidence at trial copies of computer print-outs showing that between June, 1977, and October, 1977, Meltzer & Schiffrin billed it $3,313.00 for work related to this case. Additionally, David L. Miller, a Meltzer & Schiffrin partner, testified concerning the print-outs. Appellant argues that Miller was unqualified to testify concerning the legal fees charged by his firm.

"Hearsay evidence is an out-of-court statement offered for the purpose of proving the truth of the matter asserted therein." *Baird v. Unemployment Compensation Board of Review*, 30 Pa.Cmwlth. 118, 122, 372 A.2d 1254, 1257 (1977). Section 2 of the Uniform Business Records as Evidence Act, a statutory exception to the hearsay rule, provides:

> A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Act of May 4, 1939, P.L. 42, No. 35, § 2; 28 P.S. § 91b, repealed by Act of June 27, 1978 (current version at 42 Pa.C.S.A. § 6108).

We cannot consider whether the lower court erred in admitting the computer print-outs into evidence as business records because appellant did not object on the record when the chancellor admitted them. (N.T. Dec. 5, 1977, p. 191.) *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). If we construe appellant's argument as a challenge to the sufficiency of the evidence in support of the information contained in the computer print-outs, this contention is without merit. Because the print-outs were admissible to prove the facts contained therein, *Baird v. Unemployment Compensation Board of Review, supra*, testimony in support of them was not required. Accordingly, the lower court did not err in considering the information con-

tained in the computer print-outs in computing the legal fees.

Order affirmed.