436 A.2d 1192

**POSH CONSTRUCTION, INC.,**

v.

**SIMMONS & GREER, INC., and Maryland Casualty Company and Samuel F. Meisenhelder, Trustee in Bankruptcy of Simpson Steel Products Company, Inc., Additional Defendant.**

**Appeal of MARYLAND CASUALTY COMPANY.**

Superior Court of Pennsylvania.

Argued March 10, 1981.

Filed Oct. 30, 1981.

David M. Kozloff, Reading, for appellant.

Lewis R. Long, Bethlehem, for appellees.

Before HESTER, DISALLE and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The Appellant in the instant case [1] is one of the original defendants, Maryland Casualty Company (hereinafter referred to as "Maryland Casualty"). The case was tried in the lower court before a jury, which returned a verdict for the plaintiff against Maryland Casualty, and verdicts in favor of the other original defendant and the additional defendant. Maryland Casualty filed a motion for judgment n. o. v., or in the alternative, for a new trial. The lower court granted a new trial, but Maryland Casualty has filed the instant appeal, claiming that it was entitled to judgment n. o. v.

It is well-established that when a motion for judgment n. o. v. or a new trial is filed, and the lower court grants the new trial but denies the judgment n. o. v., the appellate court is limited to a determination of whether there has been an abuse of discretion by the lower court. *Ellerbe v. Steinman*, 162 Pa.Super. 440, 58 A.2d 202 (1948); *Standard Oil Company of New Jersey v. Graham Oil Transport Corp.*, 157 Pa.Super. 41, 41 A.2d 414 (1945). However, if the record clearly establishes that the moving party was

1. The Complaint was filed in October, 1970 and the additional defendant was joined in the case in November, 1970. In November, 1975 the lower court prothonotary terminated the case for lack of activity. Upon the plaintiff's request the lower court ordered the reinstatement of the action in May, 1976. The defendants appealed to our Court, which affirmed the reinstatement order. See *Posh Construction v. Simmons & Greer, Inc.*, 252 Pa.Super. 640, 382 A.2d 760 (1978).

entitled to judgment n. o. v., the grant of a new trial in such circumstances may be found to have been an abuse of discretion on the part of the lower court. See *Matevish v. School District of Borough of Ramey,* 167 Pa.Super. 313, 74 A.2d 797 (1950), where there were no factual issues for determination by a jury. Further, we must be mindful that judgment n. o. v. will be entered only in a clear case, when the facts are such that no two reasonable persons could fail to agree that the verdict was improper, and any doubts should be resolved in favor of the verdict. See *Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344, 414 A.2d 100 (1980); *Broxie v. Household Finance Co.,* 472 Pa. 373, 372 A.2d 741 (1977); *Bottorf v. Waltz,* 245 Pa.Super. 139, 369 A.2d 332 (1976). In the resolution of this appeal, we must consider the evidence available to the lower court in the light most favorable to the verdict winner, giving it the benefit of every reasonable inference of fact arising therefrom, and we must resolve any conflict in evidence in the favor of the verdict winner. See *Broxie v. Household Finance Company,* supra.

Viewing the evidence in that light, the record shows that the defendant Simmons & Greer, Inc. (hereinafter referred to as "Simmons") was a general contractor for various building projects. In late January, 1969 Simmons entered into a contract with the General State Authority for the erection of a gymnasium at Kutztown State College in Berks County. Pursuant to the Public Works Contractors Bond Law [2], Simmons obtained performance and payment bonds for the project, from Maryland Casualty. During the course of the project, Simmons entered into a contract with Simpson Steel Products Company, Inc.[3] (hereinafter referred to as "Simpson"), for certain work on the project. In turn, Simpson hired the plaintiff, Posh Construction, Inc. (herein-

2. Act of December 20, 1967, P.L. 869, § 1, 8 P.S. § 191, et seq.; see § 3, 8 P.S. § 193 in particular.

3. As indicated in the caption of this case, Simpson was in bankruptcy proceedings at the time of its inclusion as an additional defendant in this case. Simpson was not present at trial, either through its trustee in bankruptcy or by counsel.

after referred to as "Posh"), to furnish labor, materials, and equipment to Simpson for the project. Thereafter, the Plaintiff commenced work on the gymnasium construction in September, 1969. Posh submitted an initial bill to Simpson for partial work completed on the project and Simpson paid the bill by check. However, the Plaintiff's next billing to Simpson was not paid and Posh approached the general contractor, Simmons, about the problem. Posh did this by orally notifying the Simmons' field superintendent at the construction site that it would not continue on the job unless it was paid, as Simpson had not made a payment for work completed to that date, in accordance with the second billing by Posh. Thereafter, a representative of the plaintiff was summoned to Simmons' home office in Philadelphia. At that time, Posh's representative received a check from Simmons in the amount of just over $11,000.00, which check was made payable to both Simpson and Posh as co-payees. The Posh representative obtained appropriate signatures on the check from Simpson and deposited the proceeds of the check in its own account. As the work progressed further, Simmons issued another check for almost $21,000.00, in identical circumstances, for the benefit of the plaintiff. In the instant action, Posh claimed a balance due of just over $14,-000.00, representing both the final payment on its work for Simpson on the project, and also including several hundred dollars for work performed directly at the request of Simpson, which work was not covered by plaintiff's contract with Simpson.

The plaintiff filed the instant action claiming it supplied its labor, material and equipment in reliance upon Simmons' promise to pay any debts of Simpson to the plaintiff in connection with the project. The plaintiff claimed that Maryland Casualty was liable to it under Simmons' payment bond, and in that regard, the plaintiff's claims were based upon its rights under the Public Works Contractors Bond Law of 1967. In describing the types of bonds required, that Act in § 3(a)(2) [8 P.S. § 193(a)(2)] states that a payment bond "... shall be solely for the protection of claimants

supplying labor or materials to the prime contractor to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract, and shall be conditioned for the prompt payment of all such material furnished or labor supplied or performed in the prosecution of the work." Further, § 4(b) [8 P.S. § 194(b)] is particularly relevant to the issues presented in this case, and provides:

Any claimant who has a direct contractual relationship with any subcontractor of the prime contractor who gave such payment bond but has no contractual relationship, express or implied, with such prime contractor may bring an action on the payment bond only if he has given written notice to such contractor within ninety days from the date on which the claimant performed the last of the labor or furnished the last of the materials for which he claims payment, stating with substantial accuracy the amount claimed and the name of the person for whom the work was performed or to whom the material was furnished.

Notice shall be served by registered or certified mail, postage prepaid, in an envelope addressed to such contractor at any place where his office is regularly maintained for the transaction of business or served in any manner in which legal process may be served in the manner now or hereafter provided by law for the service of a summons, except that such service need not be made by a public officer.

It was conceded at trial by the plaintiff that it had not furnished any written notice to Simmons, the defendant general contractor, concerning its claim. At the request of the defendants, the trial judge instructed the jury: (1) that no evidence had been presented to prove that the plaintiff had notified Simmons of its claim in accordance with the provisions of the bond law; (2) that such notice was in fact not given; and (3) that if the jury was to find that such notice was required of plaintiff, then there was no right or entitlement to recovery by plaintiff under the bond. Thus,

under the statutory provision cited earlier, it was apparent that the plaintiff could recover from Simmons only if a contractual relationship existed between it and Simmons. Therefore, the trial court charged the jury that it was required to decide whether Posh was a proper claimant under the bond law, and, if so, whether plaintiff had a direct contractual relationship, either expressed or implied, with Simmons.

Maryland Casualty has claimed that it was entitled to judgment n. o. v. in the lower court because there was no evidence upon which the jury could have returned a verdict in favor of the plaintiff and against the Appellant. After a thorough review we are convinced that the lower court acted prudently, and certainly did not abuse its discretion, in denying the motion for judgment n. o. v. It simply could not be said, as a matter of law, that the plaintiff was not a proper claimant under the Bond Law. That Act clearly provides that a payment bond may be applied to the protection of claimants supplying labor and materials to the subcontractor of the prime contractor. The evidence, viewed in a light most favorable to the plaintiff, certainly supported a finding that the statutorily required contractual relationship existed between the plaintiff and Simmons. Such is evident by virtue of the transactions whereby Simmons made payments directly to the plaintiff, at least as a co-payee with Simpson, for the work which the plaintiff performed on the construction project. Moreover, the record is clear that as a result of understandings reached between the plaintiff and Simmons, the former did not discontinue its work on the job, even though Simpson was not making payments on the contract.

A judgment n. o. v. would only have been granted in circumstances where binding instructions would have been proper at the close of trial. See *Stewart v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970). Binding instructions certainly would not have been proper at the close of the trial in the instant case, either on the issue of whether the plaintiff was proper claimant under the bond law, and/or whether a

contractual relationship, express or implied, may have existed between the plaintiff and Simmons. Thus, we find that the decision to deny the request for judgment n. o. v. did not constitute error on the part of the lower court.

The lower court found that a new trial was appropriate because the verdict in favor of Simmons, but against its insurer, Maryland Casualty, was inconsistent. The Appellee, Posh, argues on this appeal that the lower court had the power to mold the verdict to eliminate any possible inconsistency, and seeks to have this court amend or mold the jury verdict. Any consideration of such contentions would not be appropriate, as Posh filed no appeal from the lower court's order granting a new trial. Thus, the questions of whether the new trial was properly granted, or whether the lower court or this court could or should mold the verdict, are simply not before us on this appeal.

The order of the lower court denying the motion for judgment n. o. v. is hereby affirmed.