442 A.2d 700

**LaVerne R. MARTIN and George Martin, her husband, Appellants,**

v.

**Larry SOBLOTNEY.**

Superior Court of Pennsylvania.

Argued Feb. 11, 1981.

Filed Feb. 5, 1982.

Reargument Denied May 12, 1982.

Petition for Allowance of Appeal Granted Sept. 14, 1982.

John F. Becker, Pittsburgh, for appellants.

S. Asher Winikoff, Pittsburgh, for appellee.

Before BROSKY, DiSALLE and SHERTZ, JJ.

SHERTZ, Judge:

Appellants George Martin (husband Appellant) and La-Verne R. Martin (wife Appellant) were injured in a two-car accident which occurred when the vehicle operated by Appellee crossed over Pennsylvania Route 51 onto Appellants' side of the road and struck the vehicle being operated by husband Appellant. Appellants thereupon brought this action under Section 301(a)(5) of the Pennsylvania No-Fault Motor Vehicle Insurance Act [1] (No-fault Act). Husband Appellant sought damages under Section 301(a)(5)(B) and wife Appellant, although pleading a cause of action under Sections 301(a)(5)(B) and 301(a)(5)(D), [2] proceeded at trial solely under the latter section.

1. Act of July 19, 1974, P.L. 489, No. 176, 40 Pa.Stat.Ann. § 1009.-301(a)(5)(B) (Purdon Supp.1981).

2. The pertinent sections of the No-fault Act provide:

(a) Partial abolition.—Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle, except that:

. . . . .

(5) A person remains liable for damages for non-economic detriment if the accident results in:

. . . . .

(B) the reasonable value of reasonable and necessary medical and dental services, . . . incurred in the diagnosis, care and recovery of the victim, exclusive of diagnostic x-ray costs and rehabilitation costs in excess of one hundred dollars ($100) is in excess of seven hundred fifty dollars ($750) . . . . or

. . . . .

(D) injury which in whole or in part consists of cosmetic disfigurement which is permanent, irreparable and severe.

40 Pa.Stat.Ann. §§ 1009.301(a)(5)(B) and (D) (Purdon Supp.1981).

The trial judge, after directing a verdict for husband Appellant on liability,[3] submitted Special Interrogatories to the jury. Based upon the jury's responses [4] to the Interrogatories, the trial judge molded a verdict in favor of husband Appellant in the amount of $5000, and in favor of Appellee as to the claim of wife Appellant. Appellants' motions for new trial and judgment n. o. v. were denied and judgment was entered on the verdicts. This appeal followed.

**3.** We do not address the propriety of this action inasmuch as it has not been challenged by Appellee.

**4.** The Special Interrogatories to the jury, together with *its responses thereto*, read as follows:

### SPECIAL INTERROGATORIES TO JURY

1. Was the Defendant, Larry Soblotney, negligent?

ANSWER: Yes __X__ No _____

(If you answer no, you need not go any further.)

2. Was the negligence of the Defendant, if any, a substantial factor in bringing about harm to the Plaintiffs?

ANSWER: Yes __X__ No _____

(If you answer no, you need not go any further.)

3. Did the Plaintiff, Laverne Martin, suffer any injury which consists of cosmetic disfigurement which is permanent, irreparable and severe?

ANSWER: Yes _____ No __X__

(If you answer no, you need not answer question 5.)

4. What is the amount of damages, if any, suffered by Plaintiff, George Martin?

ANSWER: __$5000__

5. What is the amount of damages, if any suffered by the Plaintiff, Laverne Martin?

ANSWER: _____

(Answer this only if your answer to No. 3 was "yes".)

/s/ Lucille S. Affinits
Foreperson

Husband Appellant contends that the trial court erred in refusing to permit proof of the medical expenses incurred by husband Appellant. We agree and therefore reverse the lower court's order denying husband Appellant's motion for a new trial.[5] Wife Appellant contends that the trial judge erred in allowing improper cross-examination, in refusing to permit proof of the cost of medical services which had not been and would not be incurred, and in refusing to grant wife Appellant's motion for judgment n. o. v. We disagree and therefore affirm the lower court's order denying wife Appellant's motions for new trial and judgment n. o. v.

## George Martin

The sole, and narrow, issue under consideration in husband Appellant's appeal is whether, in a tort action brought pursuant to Section 301(a)(5)(B) of the No-fault Act, evidence of the cost of medical services necessitated by injuries arising out of a motor vehicle accident and incurred as of the time of trial, is admissible. We point out that we are not here concerned with whether expenses for such services may be pleaded as damages, See Zagari v. Gralka, 264 Pa.Super.Ct. 239, 399 A.2d 755 (1979), nor whether they may be pleaded as evidentiary facts, See D'Antona v. Hampton Grinding Wheel Co., Inc., 225 Pa.Super.Ct. 120, 310 A.2d 307 (1974).

In the case at bar, husband Appellant's *pleading* of medical expenses incurred, and to be incurred,[6] elicited no objec-

The responses to the first two interrogatories were supplied by the trial court, pursuant to its direction of a verdict in favor of husband Appellant.

5. In view of our disposition, we need not and do not address husband Appellant's other contentions and we deem his motion for judgment n. o. v. moot.

6. Paragraph 25 of Appellant's complaint, relating to husband Appellant, reads as follows:

25. As a further result of this accident, the plaintiff has been or will be obliged to receive and undergo medical attention and care and to expend various sums of money for or to incur various expenses described in 40 P.S. 1009–301(A)(5)(b) for the injuries suffered, the cost or reasonable value of which is, or may be, in

tion by Appellee. However, when, at trial, husband Appellant attempted to offer *proof* of the medical expenses he had incurred as of that time, Appellee's objection thereto was sustained by the trial court. R.R. at 104a–105a, 177a–178a. Husband Appellant argues that the learned trial judge erroneously relied on *Zagari, supra,* and in so doing committed reversible error.

The logical starting point, in attempting to reach a determination of the instant issue, is the Pennsylvania No-fault Act itself. Although some No-fault statutes specifically preclude proof of such expenses,[7] while others specifically allow such proof,[8] our No-fault Act does neither. We there-

> excess of the sum of $750.00 exclusive of diagnostic, x-ray and rehabilitation costs in excess of $100.00, and may be obliged to continue to expend such sums or incur such expenditures for an indefinite time in the future. The plaintiff has incurred the following expenses for such treatment to the date indicated:
>> a. McKeesport Hospital—inpatient services rendered January 2, through January 11, 1976 ... $1,508.50

**7.** The New Jersey Automobile Reparation Reform Act, N.J.Stat.Ann. § 39:6A–1 et seq., provides in § 39:6A–12 that:
> "Evidence of the amounts collectable or paid pursuant to sections 4 and 10 of this act to an injured person is inadmissible in a civil action for recovery of damages for bodily injury by such injured person."

Title 21 of the Delaware Code § 2118(g) provides that:
> "Any person eligible for benefits described in paragraph (2) or (3) of subsection (f) of this section other than an insurer in an action brought pursuant to subsection (c) of this section, is precluded from pleading or introducing into evidence in an action for damages against a tort-feasor those damages for which compensation was available under paragraph (2) or (3) of subsection (a) of this section without regard to any elective reductions in such coverage and whether or not such benefits are actually recoverable."

**8.** Florida's Automobile Reparations Reform Act, Fla.Stat. § 627.727 et seq., provides that:
> "... An injured party who is entitled to bring suit under the provisions of § 627–737, or his legal representative, shall have no right to recover any damages for which personal injury protection benefits are paid or payable. The plaintiff may prove all of his special damages notwithstanding this limitation, but if special damages are introduced in evidence, the trier of facts, whether judge or jury, shall not award damages for personal injury protection benefits paid or payable." Fla.Stat. § 627.736(3).

fore are obliged, pursuant to the Statutory Construction Act of 1972, 1 Pa.Cons.Stat.Ann. § 1501 et seq. (Purdon Supp. 1981), to apply the canons of statutory construction in order to determine whether the legislature intended to allow or to preclude such proof.[9]

*a.*

The extensive debates which preceded enactment of the No-fault Act have resulted in an explicit legislative history which makes it abundantly clear that the General Assembly intended to permit proof of medical expenses at trial. The original No-fault Bill, H.B.1973, as reported from the Committee on Consumer Protection on May 6, 1974, included, in section 505 thereof, a preclusion of pleadings provision which provided, in pertinent part:

"any person eligible for basic loss benefits is precluded from pleading or introducing into evidence in any tort action to recover damages from another person those damages for which benefits provided have been recovered."

H.B.1973, (Session of 1974), Printers No. 3068.

New York's Comprehensive Automobile Insurance Reparations Act, N.Y. Ins. Law § 670 et seq. (McKinney) provides for a qualified right to plead loss recoverable under the act.

"Where there is no right of recovery for basic economic loss, such loss may nevertheless be pleaded and proved to the extent that it is relevant to the proof of noneconomic loss." N.Y.Ins.Law (McKinney) § 673 Subd. 3.

9. 1 Pa.Cons.Stat.Ann. § 1921 (Purdon Supp.1981), which articulates the criteria we must consider in determining, and giving effect to, the legislative intent, provides as follows:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

. . . . .

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

. . . . .

(7) The contemporaneous legislative history.

On June 4, 1974, Representative Scanlon introduced an amendment deleting, *inter alia*, the preclusion from pleadings provision of the bill. Excerpts from the ensuing debate [10] demonstrate, beyond peradventure, that the legisla-

10. MR. SCANLON. My amendment removes from the bill what is known as section 505, on page 53, lines 9 through 27. This is referred to as the preclusion of pleadings provision of the act. Now under section 505, if A and B are involved in an automobile accident . . . A . . . can only go into court and say, I was hurt. He cannot go in and say, I went to Dr. X and Dr. Y and they each charged me $50.00. I was in Z Hospital and it cost me $650.00.

. . . . .

[W]hen the jury does enter a verdict in the case of A against B, they just guess on an amount. They have nothing upon which to base a verdict.
On the other hand, if you were permitted to tell them how much you paid each doctor, how much you paid each hospital, how much you paid for X-rays, what your lost wages were and describe your pain and suffering, a jury, once having a dollar amount, could certainly arrive at a more rational verdict. But if they have no amounts to begin with, no idea how much you have spent, it appears to be to be ridiculous to expect a jury to come up with what would be a just verdict.
For these reasons, I, ask the members of the House to support this amendment.

. . . . .

MR. MANDERINO. Mr. Speaker, I rise to support the amendment offered by Mr. Scanlon.
What does a preclusion of pleadings mean, as in House bill No. 1973 at the present time, if first-party benefits are recovered or recoverable under the no-fault provisions of this particular legislation—you may not have collected them but you still cannot prove their dollar amount—if you get to the point that you file a law suit or are able to file a law suit under the provisions of the bill? What does this mean?
This means that if I get over the medical threshold—whatever that amount might be—when I go into court, [I] can testify that I went to the doctor on May 1, the doctor examined me, and the doctor prescribed a cast for the broken bone, I went to the doctor on May 29, he X-rayed it, and he removed the cast. I cannot tell them what the doctor charged me for the initial examination, what he charged me to put the cast on, what he charged me to take it off. I cannot tell the jury how much, in another case, was spent in hospital stays. I cannot tell the jury, if I have lost wages, the amount of wages I have lost. I can simply tell them that I am a mechanic and that I lost 30 days at work.
Now it seems to me that once you get to the point where you have decided that this case is serious enough so that this injured party has the right to bring a law suit under the no-fault bill passed, you ought to give the right to prove . . . the amount of his medical

tors were fully informed, and clearly understood, that the purpose of the amendment was, *inter alia,* to allow proof of medical expenses to be offered and admitted into evidence

expense in dollars, and not simply allow a jury to guess ... how much he really took out of his pocket to pay his medical bills, because, as Mr. Foor says, they use that as a gauge to decide what is a fair award.

I think that that is a much better way to prove your claim, by actual dollar loss, by actual economic loss, than to leave it up to a jury to guess what those particular items might be.

I think the amendment offered by Mr. Scanlon makes an awful lot of sense. I do not think it will be any great detriment to this no-fault statute that we will pass in Pennsylvania. I urge the adoption of the amendment.

MR. SCANLON, ... Now I would have no objections, I think to a fair preclusion of pleadings provision if there were no threshold. But in the Pennsylvania statute proposed here today, there is a threshold of $750.00, and to add to that the ignominy of a preclusion of pleadings section is completely unfair.

... There are volumes and volumes of case law in the field of excess verdicts. And how does the Supreme Court review an excessive verdict case?

They look at the items of special damage in dollars and cents which were proven by the plaintiff. Then they compare that with the amount brought in by the jury, and they determine whether or not the verdict was, in effect, excessive so as to shock their conscience.

Now, Mr. Speaker, I do not know how a court could review a verdict under the circumstances as this bill presents it when the plaintiff is precluded from proving the special damages on a dollar-by-dollar amount.

.     .     .     .     .

MR. W. D. HUTCHINSON. Mr. Speaker, I urge the defeat of this amendment, and there is a very simple reason. It goes with what Mr. Renninger said. What the amendment would do would permit you to put before the jury items of damages which are not recoverable. It seems to me that that is utterly illogical. If you have to prove a case on pain and suffering, you prove it by calling the doctor and by calling the witness or your client to testify to what he experienced and what he felt. But there seems to be no logical reason to include items of damages before the jury that you cannot recover.

.     .     .     .     .

MR. HEPFORD. ...
... Let us have the jury receive all the facts in the case and then, if you want to take some procedure to credit any payments made, that would be the proper way to do it.

.     .     .     .     .

MR. ITKIN. ... What is really precluded? Is it the dollar amount?

MR. SCANLON. It precludes from ... introducing into evidence in any tort action to recover damages from another person those damages for which benefits provided have been recovered. The word "damages" precludes you from proving damages. "Damages," to me, means dollars and cents.

MR. ITKIN. So it is really a dollars-and-cents figure?

MR. SCANLON. That is right.

. . . . .

MR. SCANLON. It is my understanding of the law that there has to be a reasonable relationship between that portion of the verdict which is attributable to pain and suffering and the value of the special damages which have been proven.

So in order for a jury to make a sensible verdict and make a sensible award for pain and suffering, it is my understanding of the law that they must know the value of the medical services provided, for instance.

. . . . .

... There are so many intangibles here that to shut out the plaintiff by saying he cannot prove specifically in dollars and cents his losses appears to me to be ridiculous.

. . . . .

MR. ITKIN. Well, it seems to me that all we are trying to preclude from pleading is something which is irrelevant; that is, to take a tangible concept of how much money was paid out to pay certain bills, how much the individual has made, and who has received total and complete economic recovery for those out-of-pocket expenses, and then state that the person's pain and suffering is somehow related to the price he paid to his physician and to the earnings that he receives as a wage earner.

My interpretation is that if a person has a broken rib, whether he be a mechanic or whether he be a high-priced attorney, he has the same pain and the same suffering and should receive the same type of award.

Therefore, I strongly support the retention of the preclusion of pleadings clause and I urge this House to vote against the amendment.

. . . . .

MR. FOOR....

... when you sue for pain and suffering ... you cannot say how much money you spent in your doctor bills, but you can describe your injury—I was in a cast; I was 6 weeks in bed. You can describe how much it hurt, but you cannot describe the monetary value. That is the reason for the preclusion of pleadings in this bill, and I ask for a negative vote on this amendment.

. . . . .

MR. MANDERINO. Just one footnote. When we adopt a threshold provision, we are effectively eliminating from the courts a very high percentage of potential law suits .... what you are doing is saying you not only have to reach that threshold, but we are going to place a millstone around your neck when you go into court—you are not going to be able to tell what the dollar figures are that you had to pay for medical expense ...

at trial. The ultimate passage of the amendment,[11] and the subsequent enactment of the No-fault Act, devoid of a preclusion of pleadings provision, transformed the purpose of the amendment into a clear expression of legislative intent, an intent which we are obliged to effectuate.

### b.

Proper statutory construction also requires that we give effect to all provisions of a statute. In doing so, we find Section 102(a)(6)(B) of the Act [12] instructive when read to-

> I think that the threshold is a severe enough restriction. It will accomplish all the purposes that no-fault wants to accomplish. It is working in other states without putting in both threshold and preclusion of pleadings. And I think that every discerning member of this House should support the Scanlon amendment.
>
> MR. RENNINGER.
> . . . If you are going to go over the threshold and have a further crack at pain and suffering, then prove it like Mr. Hutchinson suggested, and I think that is sound.

Legislative Journal, House of Representatives, June 4, 1974 at 4747–53.

11. Although Representative Scanlon's amendment was originally defeated, upon reconsideration the amendment was passed and the preclusion from pleadings provision of the Bill was deleted. Legislative Journal, *supra* at 4763–64. Of particular interest are the remarks of MR. RYAN, moments before the reconsideration vote was taken:

> It is not fair to the innocent victims. These people we have to think about, too. They should be entitled to take before the jury what their medical expenses were . . . This bill would preclude that, and it is for that reason I would ask, again, for a favorable vote on the Scanlon amendment.

*Id.* at 4763.

12. 40 Pa.Stat.Ann. § 1009.102(a)(6)(B), which provides:

(a) Findings.—The General Assembly hereby finds and declares that:

(6) careful studies, intensive hearings, and some State experiments have demonstrated that a basic system of motor vehicle accident . . . law which:

(B) eliminates the need to determine fault except when a victim is very seriously injured, is . . . a . . . fair system.

gether with Section 301(a)(5). Section 102(a)(6)(B) "finds and declares" that only very seriously injured victims need become involved in a proceeding intended to determine fault (in order to recover damages for non-economic detriment). In implementation thereof, Section 301(a), *inter alia*, was enacted, whereby tort liability (and its concomitant requirement of determining fault) is abolished except under certain prescribed circumstances. The circumstances pertinent hereto are set forth in Section 301(a)(5), each of which, given the finding and declaration noted above, is intended to define or to describe a "victim (who) is very seriously injured". Since the exception set forth in Section 301(a)(5)(B) is defined solely in terms of "the reasonable value of reasonable and necessary medical and dental services", it constitutes an express legislative determination that the value of such services is probative of the severity of injuries. Consequently, inasmuch as the fact finder in a tort action brought under Section 301(a)(5)(B) must evaluate the severity of the plaintiff's injuries in calculating the amount of damages for non-economic detriment, proof of the value of medical services incurred, bring probative thereof, is relevant and admissible.

*c.*

The Statutory Construction Act, in Section 1921(c), indicates that the intention of the General Assembly may be ascertained by considering the items enumerated therein "among other matters". In giving heed to this injunction, we have identified several other matters which we deem to be pertinent and instructive. They consist of questions involving jurisdiction, relevance and the development of an adequate record for appellate review. Careful consideration of each of these factors confirms the correctness of our conclusion regarding the admissibility of the value of medical services.

An insurmountable jurisdictional problem would be created if we were to adopt Appellee's view that the reasonable value of medical services may not be proven at trial. As

previously noted, in order for a party to meet the threshold requirement of Section 301(a)(5)(B), he must establish that "the reasonable value of reasonable and necessary medical . . . services . . . is in excess of seven hundred fifty dollars . . . ." Absent such a showing, a court is unable to ascertain whether the party's action, grounded in tort liability, falls within or without the class of actions saved by Section 301. That is to say, absent such a showing a court is unable to determine whether it has jurisdiction over the subject matter of the action.

■ It is well established in Pennsylvania that where a tribunal lacks authority to hear a particular type of case, the parties may not supply such authority. Subject matter jurisdiction may not be founded upon waiver, estoppel or agreement of the parties. *Department of Public Welfare v. UEC, Inc.*, 483 Pa. 503, 397 A.2d 779 (1979); *Appeal of Kramer*, 445 Pa. 238, 282 A.2d 386 (1971); *Sarsfield v. Sarsfield*, 251 Pa.Super.Ct. 516, 380 A.2d 889 (1977); *Gordon v. Pulakos*, 48 Pa. Commonwealth Ct. 442, 410 A.2d 899 (1980). How then, short of actual proof at time of trial, can the court conclude that it has subject matter jurisdiction? The short answer is that it cannot; [13] both logic and law require that such proof be presented to the jury for its consideration.

■ In a jury trial, the proper role of the jury includes resolution of issues of fact. *DeFulvio v. Holst*, 272 Pa.Super.Ct. 221, 414 A.2d 1087 (1979); it is for the jury to decide the reasonableness of charges for medical and hospital services. *See Yost v. City of Philadelphia*, 174 Pa.Super.Ct. 555, 102 A.2d 210 (1954). Therefore, it is the jury alone which must hear the evidence and, based thereon, decide whether all, or any, of the medical services obtained were "reasonable and necessary". Similarly, it is for the jury alone to deter-

13. Proof of this assertion is found in the Record of the instant case. A thorough search thereof fails to disclose any facts upon which the court below could properly have concluded that it had subject matter jurisdiction. This deficiency, of course, is the natural consequence of the lower court's ruling excluding any and all evidence of the cost of the medical services incurred by husband Appellant.

mine whether the value of such services was "reasonable". Inasmuch as it is within the province of the jury to reject the reasonableness and/or necessity of any or all such services, or the reasonable value thereof, it is clear that a party must be permitted to offer proof of the value of all medical services obtained, as well as the need for, and nature of, those services.

Moving on to the questions of relevance and the development of an adequate appellate record, we may consider them together. This Court has previously commented concerning the difficulties attendant upon any attempt to evaluate pain and suffering. *See Fretts v. Pavetti*, 282 Pa.Super.Ct. 166, 177, 422 A.2d 881, 886 (1980); *Robert v. Chodoff*, 259 Pa.Super.Ct. 332, 368, 393 A.2d 853, 872 (1978). The gist of these comments is, quite aptly, that, in the evaluation of pain and suffering, "systematic logic is not helpful and precision is not achievable". *Frankel v. Heym*, 466 F.2d 1226 (3d Cir. 1972). We have also pointed out that, since pain and suffering have no market value, the amount to be awarded therefor is left to the common sense and sound judgment of the jury. *Pape v. Short*, 199 Pa.Super.Ct. 617, 186 A.2d 431, 432 (1962). Query: would *we* exercise common sense and sound judgment were we to deny to the jury evidence which the jurors, acting under proper instructions from the trial judge,[14] might find helpful in responsibly discharging their unquestionably difficult task of evaluating pain and suffering? Query also: would we help or hinder our appellate courts, in their task of ascertaining whether a jury verdict is excessive, adequate or inadequate, were we to approve the exclusion of such evidence from the trial record?

■ Is there, or has there ever been, a practicing attorney or an insurance company claims adjustor who has ignored— or rather, who has not specifically considered, the amount of medical expenses, in the course of negotiations looking to a settlement of a personal injury claim? Similarly, is there, or has there ever been, a judge who has eschewed knowledge of

14. *See e.g., Troutman v. Tabb*, 285 Pa.Super.Ct. 353, 427 A.2d 673 (1981).

the medical expenses, in attempting to mediate a settlement conference in a personal injury case? Moreover, have not appellate courts repeatedly held that the amount of medical expenses occasioned by an injury is a relevant factor in determining the excessiveness, adequacy or inadequacy of a verdict? *See Fretts*, 282 Pa.Super.Ct. at 176, 422 A.2d at 886; *Murphy v. Penn Fruit Company*, 274 Pa.Super.Ct. 427, 434, 418 A.2d 480, 484 (1980); *Defulvio v. Holst*, 272 Pa.Super.Ct. at 227, 414 A.2d at 1091; *Kravinsky v. Glover*, 263 Pa.Super.Ct. 8, 25, 396 A.2d 1349, 1358 (1979); *Wright v. Engle*, 256 Pa.Super.Ct. 321, 326, 389 A.2d 1144, 1147 (1978); *Kemp v. Philadelphia Transportation Company*, 239 Pa.Super.Ct. 379, 361 A.2d 362 (1976). How then can we, and why then should we, deny such evidence to jurors who, though their common sense and sound judgment may arguably exceed that of attorneys, claims men and judges, lack experience in the area of personal injury claim evaluation? We can not, we should not and we do not. We therefore hold, for all the foregoing reasons, that evidence of the reasonable value of reasonable and necessary medical services is admissible in an action arising under Section 301(a)(5)(B) of the No-Fault Act.

*d.*

In reaching a contrary result, the learned trial judge considered *Zagari v. Gralka, supra*, as controlling and felt constrained thereby to exclude proof of the value of husband Appellant's medical services. We respectfully disagree inasmuch as we believe that: (1) *Zagari* is distinguishable, (2) *Zagari* is inapposite and (3) if *Zagari* can be read as concluding that the value of medical services is inadmissible at trial,[15] such a conclusion is *obiter dictum* and therefore not binding upon this Court.

**15.** There is some doubt as to whether *Zagari* can, or at least should, be so read. This doubt arises from a subsequent characterization thereof by Judge Price, who wrote the majority opinion in *Zagari*. In *Fretts, supra*, Judge Price stated:

We have previously noted the difficulty in achieving precision in *calculating* appropriate compensation because one cannot discern

"In every case, what is actually decided is the law applicable to the particular facts; all other legal conclusions therein are but obiter dicta ". *In Re Schuetz's Estate*, 315 Pa. 105, 109, 172 A. 865, 867 (1934). This succinct statement of the rule is a distillation of the following more expansive discussion. General expressions in an opinion may not properly be severed from, and must be considered in light of, the facts of the case. What is actually decided, and *controlling*, is the law applicable to the particular facts of that particular case. All other legal conclusions therein are but *obiter dicta* and, though they may be entitled to great consideration, they are not controlling. *See, In Re Trust Estate of Pew*, 411 Pa. 96, 104, 191 A.2d 399, 404 (1963); *Welsch v. Pittsburgh Terminal Coal Corporation*, 303 Pa. 405, 154 A. 716, 717 (1931).

Inasmuch as the court below relied on *Zagari*, and Appellee urges us to do likewise, an analysis of *Zagari*, in the light of the foregoing well established principles of law, is required. *Zagari* came before this Court on appeal by the Plaintiff from an order of the court below which sustained Defendant's preliminary objections and struck various subparagraphs of the complaint. Only one of the stricken subparagraphs, 8(a), is here pertinent. It read as follows:

8. Solely as a direct and proximate result of Defendant's negligence and reckless conduct, as aforesaid, Plaintiff has sustained the following *damages* :

a. Plaintiff has accumulated and will continue to accumulate reasonable and necessary medical expenses for

the amount of pain and suffering that was endured *merely* by considering the expenses incurred. *See Zagari v. Gralka*, 264 Pa.Super. 239, 399 A.2d 755 (1979); *Robert v. Chodoff, supra; Pape v. Short*, 28 D. & C.2d 581 (C.P. Allegheny Co. 1961), aff'd., 199 Pa.Super. 617, 186 A.2d 431 (1962).

*Id.* 282 Pa.Super.Ct. at 176, 422 A.2d at 886 (emphasis added). In employing the word "calculating" in connection with compensation for pain and suffering, Judge Price seems to be describing a jury function. It is therefore noteworthy that, in conjunction therewith, he points up the inappropriateness of "merely" considering the expenses incurred. This can reasonably be read as indicating that the expenses incurred may be one, but not the only, factor to be considered by the jury in assessing compensation for pain and suffering.

doctors fees and theraputic treatments, the reasonable value of which is in excess of Seven Hundred and Fifty Dollars, ($750.00);

. . . . .

WHEREFORE, Plaintiff, John J. Zagari, demands Judgment against Defendant, William Gralka, in excess of Ten Thousand Dollars, ($10,000.00). (emphasis added).

Two most significant factors are readily discerned from the quoted averment and *ad damnum* clause: (1) the Plaintiff pleaded the medical expenses, accumulated and to be accumulated, as damages for which recovery was sought; and (2) no issue was, nor could have been, presented to this Court as to whether proof of medical expenses was admissible at trial. The second factor is manifest from the stage of the litigation, as well as from the substance of the order from which the appeal was taken. The first factor is equally clear and was noted by this Court as follows:

Appellants contend that once a plaintiff meets the threshold requirements of section 301(a)(5), all *economic* and non economic *damages* may be *pleaded* regardless of any prior compensation by a plaintiff's no-fault insurance obligor. With this contention we cannot agree.

Section 301(a)(5) specifically provides that damages for non-economic detriment are recoverable if the threshold requirements are met. . . . *Damage items such as medical expenses* . . . are not "non-economic detriment" and therefore do not come within the ambit of section 301(a)(5). Indeed recovery for these *damage items* is provided for in the Act itself. *Appellants, nevertheless, would have us hold that such damages are recoverable in a tort action* once the threshold requirements of section 301(a)(5) are met.[16]

**16.** In contrast, the complaint in the instant action, to which no preliminary objections were filed, did not plead the medical expenses as damages, nor did it contain any language suggesting that recovery thereof was sought. *See* n.6, *supra.* Rather, the language contained therein served the sole and necessary purpose of alleging that the court below had jurisdiction of the subject matter.

*Id.,* 264 Pa.Super.Ct. at 245, 399 A.2d at 758–759 (footnotes omitted) (emphasis added).

The foregoing analysis of *Zagari* demonstrates quite clearly that the issue presented therein was limited to, and only to, whether medical expenses may be pleaded and recovered "within the ambit of section 301(a)(5)"; no question of the admissibility of such expenses was raised and no such question was before the Court. In the case at bar, on the other hand, the issue presented is, precisely and explicitly, whether proof of medical expenses is admissible at trial; we have not been called upon to consider, or reconsider, the pleading and recovery thereof as damages.[17] In *Zagari*, this Court's holding stated a simple and direct proposition: medical expenses may not be recovered as damages in a tort action brought under the No-fault Act, therefore medical expense damages may not be pleaded in connection with such an action. This proposition is not pertinent to the instant case.[18] It ineluctably follows therefore that *Zagari* is distinguishable and inapposite.

As to *Zagari's* reference to proof of medical expenses at trial, we are satisfied, in accordance with the principles set forth above, that it is *obiter dictum,* i.e. it reflects a conclusion which is inapplicable "to the particular facts of that particular case". As such it is entitled to great consideration, but it is not controlling. Consequently, we have accorded it due consideration but we are unpersuaded thereby. We believe the better view is, and we so hold, that proof of the reasonable value of reasonable and necessary medical

Moreover, and equally significant, the litigative stage here is that trial has been concluded, post-trial motions have been dismissed and judgment has been entered.

17. In order to avoid any possibility of misunderstanding, however remote, we do wish to indicate, by way of dictum, that we are fully in accord with the *Zagari* holding that the No-fault Act precludes recovery of medical expenses. A conclusion to the contrary would constitute an impermissible disregard of the statutory language. *See* Statutory Construction Act, *supra,* § 1921(b).

18. Although evidentiary facts may not be pleaded, presentation of such facts at trial is permitted. *See D'Antona v. Hampton Grinding Wheel Company,* 225 Pa.Super.Ct. at 126, 310 A.2d at 310.

services is admissible at trial of a tort action under Section 301(a)(5)(B) of the No-fault Act.

## LaVerne R. Martin

Wife Appellant suffered a laceration of the arm which resulted in a scar. She initially argues that the trial court erred in permitting cross-examination of her medical expert witness, Dr. George C. Wright, regarding the possibility of plastic surgery to improve the scar. We conclude that this issue was not properly preserved for appeal.

We must consider wife Appellant's contention within the context of well established rules regarding the preservation of issues for appeal. First, where a reason for an objection is specifically stated, all other reasons for exclusion are waived. *Estate of Cusat*, 470 Pa. 418, 368 A.2d 698 (1977); *Commonwealth v. Negri*, 414 Pa. 21, 198 A.2d 595 (1964); *See Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); McCormick on Evidence 117 (2d ed. 1972). Second, the failure to object to, or move to strike, objectionable testimony results in a waiver of a claim that the court erred in allowing, or in failing to strike, such testimony. *Schneider v. Albert Einstein Med. Center, etc.*, 257 Pa.Super.Ct. 348, 390 A.2d 1271 (1978); *See Dilliplaine v. Lehigh Valley Trust Co., supra.* Thus if counsel does not object to the admission of evidence he may not argue on appeal that its admission was error. *Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981); *Frank B. Bozzo, Inc. v. Electric Weld Division*, 283 Pa.Super.Ct. 35, 423 A.2d 702 (1980); *International Systems, Inc. v. Personnel Data Systems, Inc.*, 274 Pa.Super.Ct. 500, 418 A.2d 518 (1980); *Capan v. Divine Providence Hospital*, 270 Pa.Super.Ct. 127, 410 A.2d 1282 (1977).

On direct examination, Dr. Wright testified that the scar was severe, permanent and irreparable. R.R. at 113a. On cross-examination the following exchange occurred between Appellee's counsel, Mr. Winikoff, and Dr. Wright:

Q Have you sent or requested that Mrs. Martin see a plastic surgeon to determine whether or not the scar is or is not permanent?

A   No, I have not.

Q   The scar itself, you indicate, has lightened in time.

A   Yes.

Q   And is it your opinion or do you know whether or not it may continue to lighten?

A   I feel that it has recovered to its maximum.

Q   You are not, doctor, a plastic surgeon, however?

A   No, sir.

Q   And it is possible, is it not, sir, that if one examined her he may have a different opinion?

> MR. BECKER [wife Appellant's counsel]: I would object to that. Anything is possible, Your Honor.
> THE COURT: Objection is overruled.

A   I feel that the scar may be improved with plastic surgery. This would be quite extensive and rather expensive requiring hospitalization and fairly extensive reconstructive surgery.

Q   Well, you indicated in response to a question that you thought that the injury was permanent and severe. I believe you used another word that Mr. Becker asked you, irreparable, irreparable.

A   Yes.

Q   Now, you have indicated that it is possible with extensive plastic surgery—.

A   To improve it.

Q   To improve it?

A   Yes.

R.R. at 122a–123a.

Wife Appellant's counsel's objection that "anything is possible" referred, quite obviously, to the form of the question, i.e., that it called for Dr. Wright to speculate as to the possibility that another physician might form an opinion different from Dr. Wright's opinion that the scar had recovered "to its maximum". Clearly the objection was not to any reference to plastic surgery by Appellee's counsel, since his question contained no such reference. The initial indication that plastic surgery might improve the scar was volun-

teered by wife Appellant's witness, Dr. Wright, in his unresponsive answer to the question which elicited the objection. Counsel interposed no objection to, nor did he move to strike, Dr. Wright's answer or the subsequent questions and answers regarding the possibility of plastic surgery. When counsel did eventually call for a sidebar conference, he still made no objection to, nor did he move to strike, the testimony in question. Rather, he requested the conference in order to indicate his intention to offer evidence of the cost of such surgery so that wife Appellant might meet the $750.00 medical expense threshold of Section 301(a)(5)(B) of the No-fault Act.[19]

In view of the foregoing, we conclude that wife Appellant waived any claim of error in connection with Dr. Wright's testimony, had error been committed. However, the trial court did not err in permitting the testimony wife Appellant now challenges. In *McGowan v. Devonshire Hall Apartments*, 278 Pa.Super.Ct. 229, 232, 420 A.2d 514, 515 (1980), this Court repeated the standards to be applied in considering the propriety of cross-examination:

[T]he scope of cross-examination is within the broad discretion of the trial court, and we will not reverse its decision absent an abuse of that discretion. *Brennan v. St. Luke's Hospital, supra* [446 Pa. 339, 285 A.2d 471]; *Copper Plumbing, Inc. v. Macioce*, 225 Pa.Super. 236, 310 A.2d 411 (1973). Although cross-examination is generally said to be confined to matters testified to by the witness on direct examination, *Woodland v. Philadelphia Transportation Co.*, 428 Pa. 379, 238 A.2d 593 (1968); *Okat-*

---

19. MR. BECKER: Your Honor, could we approach the bench a minute, please?
THE COURT: Yes.
(Discussion at side bar)
MR. BECKER: Your Honor, in view of this line of questioning I want the Court to understand that I may have to ask the doctor what it would cost to repair the scar, and the cost of repairing that scar would have to go to the jury to determine whether or not that meets the threshold of $750.00 because of this line of cross-examination.
R.R. at 123a.

kewicz v. Pittsburgh Railways Co., 397 Pa. 303, 155 A.2d 192 (1959), this is broadly defined to include inferences, deductions or conclusions which may be drawn therefrom, *Lester v. Century Indemnity Co.*, 356 Pa. 15, 50 A.2d 678 (1947), which explain or destroy the effect of the direct testimony, *Conley v. Mervis*, 324 Pa. 577, 188 A. 350 (1936); *Murphy v. Wolverine Express, Inc.*, 155 Pa.Super. 125, 38 A.2d 511 (1944).

*Id.*, 278 Pa.Superior Ct. at 244, 420 A.2d at 522. Furthermore, cross-examination which develops facts suppressed or ignored by the adverse party is proper. *See Commonwealth v. Mickens*, 201 Pa.Super.Ct. 48, 191 A.2d 719 (1963). Since wife Appellant elicited testimony from Dr. Wright that the scar was permanent and irreparable, cross-examination regarding plastic surgery which might improve or repair the scar was well within the above stated limits.

Wife Appellant next asserts that, inasmuch as plastic surgery and its possible result were introduced by way of cross-examination, the trial court should have permitted her to offer proof of the cost of such surgery in order that she might reach the $750.00 medical expense threshold of Section 301(a)(5)(B). We find this argument to be particularly inappropriate given wife Appellant's testimony, on direct examination, that she would not undergo plastic surgery. R.R. at 142a. It is clear to us, and we so hold, that the value of medical services, which a party has not incurred *and will not incur*, may not be admitted into evidence in order to satisfy the threshold requirements of Section 301(a)(5)(B).

Wife Appellant's final contention is that the trial court erred in denying her motion for judgment n. o. v. Wife Appellant argues that her request for binding instructions that her scar was severe, permanent and irreparable, should have been granted inasmuch as Dr. Wright's testimony was not controverted except by the "improper" cross-examination regarding the possibility of plastic surgery.

A judgment notwithstanding the verdict should be entered only in a clear case, when the facts are such that no two reasonable persons could fail to agree that the

verdict was improper; any doubts should be resolved in favor of the verdict winner. *Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 414 A.2d 100 (1980); *Broxie v. Household Finance Co.*, 472 Pa. 373, 372 A.2d 741 (1977); *Posh Construction, Inc. v. Simmons & Greer, Inc.*, 292 Pa.Super.Ct. 142, 436 A.2d 1192 (1981). The evidence must be considered in the light most favorable to the verdict winner, giving him the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in favor of the verdict winner. *Broxie v. Household Finance Company, supra; Posh Construction, Inc. v. Simmons & Greer, Inc., supra.*

So viewing the evidence, we find it discloses that, according to Dr. Wright, wife Appellant suffered a severe laceration, about three inches long, involving the skin and subcutaneous tissue of the upper arm, resulting in a scar and a depressed area over the incision. The scar which was severe, painful, irreparable and permanent, R.R. at 112a, had lightened with the passage of time and might be further improved with plastic surgery. R.R. at 122a.

The weight to be given the testimony of an expert witness is for the jury, *Reardon v. Meehan*, 424 Pa. 460, 227 A.2d 667 (1967), and it has a right to believe all, some, or none of the expert's testimony. *Tinicum Real Estate Holding Corp. v. Com. Dept. of Transp.*, 480 Pa. 220, 389 A.2d 1034 (1978). Even the uncontradicted opinion of an expert is not conclusive and the jury need not accept it. *Rogers v. Hammett*, 229 Pa.Super. 6, 323 A.2d 394 (1974); *Jones v. N. V. Nederlandsch-Amerikaansche Stoomvaart Maatschappij*, 374 F.2d 189 (3d Cir. 1966), *cert. denied, Holland Am. Line v. Philadelphia Ceiling & Stevedoring Co.*, 388 U.S. 911, 87 S.Ct. 2114, 18 L.Ed.2d 1349. In *Freed v. Priore*, 247 Pa.Super. 418, 372 A.2d 895 (1977), this Court considered the effect to be given to medical expert testimony:

[W]hen an expert witness states his opinion, this testimony is to be received by the jury just as any other opinion testimony. The court and jury are not bound by an

opinion of an expert. Expert testimony, if believed, merely proves, that, in light of the expert's general experience and his observations of plaintiff, he had reached the conclusions announced. These opinions are to be considered with the other evidence; they may be rejected in whole or in part; the weight to be given them is for the jury. *Cooper v. Metropolitan Life Ins. Co.*, 323 Pa. 295, 186 A. 125 (1936); *Baur v. Mesta Machine Co.*, 195 Pa.Super. 22, 168 A.2d 591 (1961).

*Id.*, 247 Pa.Super. at 426, 372 A.2d at 899–900.

In the instant case, the jury was entitled to conclude that Dr. Wright's testimony of permanency and irreparability was rebutted by his own testimony on cross-examination. Furthermore, the jury viewed photographs of the scar taken shortly after the accident, as well as the scar itself which was exhibited to the jury by wife Appellant. It was therefore permissible for the jury to reject Dr. Wright's testimony and to conclude that the scar was not severe, and/or that it was not permanent and/or that it was not irreparable. Any such finding standing alone, or in combination with any such other finding, was sufficient to sustain the verdict reached by the jury as to wife Appellant. We conclude, therefore, that the learned trial judge's refusal of wife Appellant's request for binding instructions, and the lower court's denial of her motion for judgment n.o.v., were proper.

The order of the court below dismissing wife Appellant's motions for new trial and for judgment n.o.v. is affirmed. The order of the court below, dismissing husband Appellant's motion for new trial is reversed, the judgment entered pursuant thereto is vacated and the cause is remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.

This case was decided prior to the expiration of SHERTZ and DiSALLE, JJ., commission of office.