526 A.2d 1203

**Marsha MORIENS and Dennis Moriens**

v.

**ALBERT EINSTEIN HOSPITAL, Dr. Mark Rosenberg, Dr. Louis Schinfeld, Dr. Terry German and Dr. Lawrence T. Freedman, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 5, 1986.

Filed April 13, 1987.

Reargument Denied June 25, 1987.

Michael M. Baylson, Philadelphia, for appellants.

Cary L. Sandler, Philadelphia, for appellees.

Before McEWEN, DEL SOLE and KELLY, JJ.

DEL SOLE, Judge:

The instant appeal stems from a malpractice action in which Judgment was entered against Appellants. The facts of the case are as follows. Appellee-wife was under the care of Appellants-obstetricians for her pregnancy. During the last trimester of pregnancy, Appellee visited one of the obstetricians with obvious symptoms of pre-eclampsia. Instead of being hospitalized, Appellee was sent home for bed rest and tranquilizers. While at home, her condition worsened into eclampsia causing violent convulsions, during which, she dislocated her jaw. As a further result of eclampsia, Appellee developed a permanent hypertensive condition and a diminution of eyesight. To avoid suffering from eclampsia again, Appellee subsequently submitted to sterilization. Consequently, Appellees, Marsha and Dennis Moriens, brought this malpractice action.

Appellants conceded their negligence at trial and the trial court directed a verdict in favor of Appellees for the dislo-

cated jaw. The jury returned a verdict in favor of Appellees for $300,000.00, to which was added $120,505.61 Rule 238 Delay Damages, for a total of $420,505.61. Post-trial motions were filed and were later denied by the trial court. This timely appeal followed.

Appellants present three issues for our consideration:

A. whether the court erred in granting a directed verdict for Appellees on the issue of the causation of Mrs. Morien's dislocated jaw;

B. whether the trial court erred by instructing the jury that expert testimony was not needed to establish the causation of Mrs. Morien's decision to become sterilized; and,

C. whether Dr. Sweeney, Appellees' medical expert, offered testimony which was so vague, uncertain, and misleading as to require a judgment n.o.v. in favor of Appellants.

Appellants contend that the trial court erred in directing a verdict in Appellees' favor on the issue of causation of the dislocated jaw. Appellants conceded before trial began that their failure to recognize and properly treat Mrs. Moriens' pre-eclampsia amounted to negligence. However, Appellants argue that no concession was made to the effect that their negligence precipitated the onslaught of eclampsia, which caused the convulsions and jaw dislocation. They instead allege that the medical testimony provided at trial revealed that eclamptic convulsions can occur under the finest medical care. Appellants submit that the jury should have been permitted to decide whether or not the obstetricians' negligence was the proximate cause of Mrs. Moriens' dislocated jaw.

We begin this discussion with our appellate scope of review. "On a motion for a directed verdict, the trial court must accept as true all facts and inferences tending to support the contentions of the party against whom the motion has been made, rejecting all testimony and references to the contrary." *Bucchianeri v. Equitable Gas Co.,* 341 Pa.Super. 319, 328, 491 A.2d 835, 840 (1985) (citations

omitted). Our review of such decisions rendered at the trial court level centers on whether there exists 'an abuse of discretion or error of law which controlled the outcome of the case.' *Ibid.*, citing *McDevitt v. Terminal Warehouse Co.*, 304 Pa.Super. 438, 442, 450 A.2d 991, 993 (1982).

At trial, the videotaped testimony of Dr. William Sweeney was presented by Appellees' counsel. Dr. Sweeney testified that the medical care provided by Appellant fell below what would be considered standard practice for the treatment of a patient with mild and severe pre-eclampsia. (Videotaped Deposition, "V.D.", 1/12/84, p. 49). The witness testified that the standard treatment for severe pre-eclampsia, symptoms of which Appellee illustrated when visiting her doctors, would be immediate hospitalization of the patient so that the disease would not develop into eclampsia. (V.D., p. 50). Dr. Sweeney later stated that he held the opinion, to a reasonable degree of medical certainty, that Appellants' failure to recognize and treat Mrs. Morien's symptoms was a substantial reason for the development of her subsequent eclampsia. (V.D., p. 57). It was further opined that Appellee dislocated her jaw during one of her convulsions resulting from the eclampsia. (V.D., p. 59).

Appellants called Dr. Stephen Corson to testify as a medical expert. The substance of this witness' testimony is remarkably similar to that given by Dr. Sweeney. Dr. Corson agreed that the obstetrical care afforded to Appellee fell below acceptable standards. (N.T. 1/18/84, p. 87). Likewise, the witness stated that pre-eclampsia is a manageable and treatable disease in a great majority of the cases. When asked whether there was a good chance that eclamptic convulsions could be averted by proper medical care, Dr. Corson assented. (N.T. 1/18/84, p. 88). Appellants' witness subsequently concurred that full-blown eclamptic convulsions were rare occurrences because, in most instances, patients with pre-eclampsia are given the necessary treatment. (N.T., 1/18/84, p. 89).

Based solely upon this oral testimony, the trial judge instructed the jury that they must return a verdict in

Appellees' favor on the issue of whether Appellants' negligence caused the eclamptic convulsions. In practicality, this amounted to a partial directed verdict on that issue.

■ Our discussion concerning the propriety of the trial court's action is guided by *Nanty-Glo v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932). In that bellwether decision, our Supreme Court enunciated a general rule barring directed verdicts which are grounded exclusively on the testimony of witnesses who are uncontradicted and unimpeached. The "Nanty-Glo Rule" requires that, under these circumstances, the issue be submitted to the jury. Our Supreme Court observed:

> However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence. This rule is firmly established. The credibility of these witnesses, without whose testimony plaintiff could not have recovered, was for the jury, and plaintiff's motion for binding instructions should not have been granted.

*Id.* at 309 Pa. at 238, 163 A. 523 (citations omitted).

■ We agree with Appellants' contention that *Nanty-Glo* controls our disposition of the instant case. It is for this reason that we remand for a new trial. By instructing the jury that they must find for Appellees on the causation issue, the trial judge assumed that the testimony of both parties' experts to be true. Clearly, this was an usurption of the jury's function to pass on the credibility of these witnesses. "The weight to be given the testimony of an expert witness is for the jury, and it has a right to believe all, some, or none of the expert's testimony." As in this case, the uncontradicted opinion of an expert is not conclusive and the jury is not bound by it. *Martin v. Soblotney*, 296 Pa.Super. 145, 169, 442 A.2d 700, 712, *rev'd on other grounds*, 502 Pa. 418, 466 A.2d 1022 (1982). Insofar as this

case must be tried again, we need not address the merits of the remaining issues raised by Appellants.

Judgment reversed. Case remanded for a new trial. Jurisdiction relinquished.